1422. May it please the court, my name is Ben Mead, counsel for Derek Thompson. I'll be addressing the one issue presented in this appeal, the issue of proximate causation. When people get hurt they take pain medication and when they take pain medication they sometimes accidentally overdose. All of this is common, so when a tort causes someone pain it is foreseeable that he or she may accidentally overdose on pain medication. Such foreseeability is a question of proximate cause which is a question of fact for the jury to decide. But the district court here took that question away from the jury and decided as a matter of law and summary judgment. The district court concluded as a matter of law that although the tortfeasor broke Cynthia Thompson's neck and although her pain actually caused her to pain. This ruling was erroneous and this fact issue should have been submitted to the jury. Tort law doesn't support the district court's order. When a defendant's negligence and a plaintiff's negligence both contribute to the plaintiff's injuries, the issue is one of contributory negligence. The jury, not the court, apportions fault between the plaintiff and defendant. So if a defendant causes a plaintiff pain and this in turn causes the plaintiff to negligently overdose on pain medication, it's the jury that should apportion fault between the plaintiff and the defendant. Now the district court here chose to look beyond tort law. The district court looked to workers compensation cases where comparative negligence principles don't apply. But even workers compensation cases don't support the district court's order. We've collected cases from across jurisdictions. Neither the district court nor the defendant has cited any case from any jurisdiction holding as a pain from injuries did not proximately cause a subsequent overdose on pain medication. What if she had put on say three fentanyl patches? If she had been on three fentanyl patches? Or yes, or that she took not an old fentanyl patch but maybe the equivalent of LSD or you know some very very powerful anti-pain medication. Are there scenarios where someone has taken such extreme measures to relieve their pain that at that point it becomes a not reasonably foreseeable supervening event? I think of the question, the answer to that is at least twofold. For one thing, I do want to emphasize that it's a fact question, right? So it's for the jury to make that determination. So as a general matter, it's the jury that should look at okay was it one patch, was it two patches, was it three patches? Right. Could you envision a scenario where it gets so far afield from what's foreseeable and that a district court could say yeah okay that the district court could say no reasonable jury could find. I think that such circumstances could exist if you were treating pain with something that is not recognized as a pain medication. I think LSD might be a good example. What if instead of a fentanyl patch that she happened to have, she ordered some fentanyl from China because she knew that fentanyl was good pain reliever? I mean I still think and I think that the case law supports us that so long as she is treating pain with pain medication it's reasonably foreseeable. There's cases that we've cited where it's and again it's at least a fact question that it's reasonably foreseeable because there was for example the the Wetstein case from New York. In that case the legally acquired heroin and morphine and even under those circumstances they said well it's a fact question whether they proximately caused this overdose on pain medication. Does it does it matter that she had specialized knowledge about the effects of medication? No. I dispute that she had specialized knowledge but also any specialized knowledge was not was not raised in the summary judgment SIR reply. They merely mentioned that she is a nurse. I don't believe that they say oh she has specialized knowledge. District Court didn't say that she had specialized knowledge. The issue arises for the first time in the on appeal and as we point out she is yes she works as a nurse but she works as a labor and delivery nurse. That's all we know. The very nature of her practice suggests that she wouldn't have specialized knowledge about opioid. She's not an MD. She's not a doctor and the nature of her practice is dealing with with pregnancy. Childbirth. Even though she you know even if we put aside the fact that she had that she was a nurse what about the fact that she was a human being that knew that that the fentanyl had been that she had been weaned off of the fentanyl. So wouldn't that create a reasonable basis to infer that she knew that there is something about the weaning off of the fentanyl that that made the fact that she just went and found an old fentanyl patch perhaps problematic. I want to focus in on you said reasonable basis to infer and I do that I think that's an invitation to point out again this is a fact. I understand that but at some point you know although it's the default is that proximate causes the foreseeability for proximate causes is a fact issue. At some point the facts can become so extraordinary in some situations that it's taken away from the jury. Yes. So that's what I'm trying to get. And I do and I understand that so I but I would say it may support an inference but it's certain but it wouldn't go so far as to say oh well it's a superseding cause as a matter of law. I think that the typical person you know wouldn't wouldn't think to themselves oh well because I was weaned off of something you know you're weaned off of something for reasons having other to do then oh I've lost my tolerance to it. You may be weaned off of it because it's like okay well this may have some addictive properties or whatever else and so we're going to gradually take you off of it. You don't think to yourself oh well if I take an old one it's gonna kill me. And so I don't think that it's so extraordinary that you take the fact question away from the jury on that one basis alone. I assume for purposes of this argument that she was grossly negligent. What does that do to your case? Well I dispute that. I mean I know you do. And I do address it in some depth in the reply brief. Yeah. And I do want to point out the district court didn't say she was grossly negligent. No order in the district court's orders. The district court's you know that wasn't the basis for the district court's order. Also I do think. I mean does it create problems for you though if she was grossly negligent? I honestly don't think that it does. I mean I would encourage you to really read in depth the White case from the Colorado Supreme Court. They're very clear about the fact that contributory negligence that you still are applying the same contributory negligence principles even when one of the two I think that's right. That's Colorado law. If it were the law that gross negligence operated as a complete defense in a tort case we would have seen that reflected somewhere in tort law. And I don't see it reflected anywhere in tort law. There's a concept from criminal law that where there's no comparative negligence principles. There's that concept that okay if the victim is grossly negligent then it operates as a you know it relieves the tort law and that's because we we apply comparative fault principles. So I so and again I do dispute that she was grossly negligent. I don't think that she was. I think it's simple negligence to just use one old medication that's in your medicine cabinet doesn't qualify as gross negligence. Are there any other questions? I do encourage you to please review the Wetstein case from the Southern District of New York, the Shirley case from Washington, the Rice case also from New York. In the Wetstein case the overdose was on a legally acquired heroin and morphine. In the Shirley case the overdose was on a combination of current pain medication. Pain medication is prescription and aspired and alcohol. And in the Rice case the overdose was on a currently prescribed pain medication and a pain medication that had been discontinued. All of these cases the workers compensation cases but they do apply the proximate cause standard. Same as the standard here and in all of those cases they said it is a question of fact for the finder of fact whether the The present case is like those cases. Cynthia Thompson never engaged in any drug-seeking behavior. Rather she was prescribed fentanyl for her neck pain. Years later she was weaned off of it. But then the torque fuser crashed his car into hers breaking her neck. For the broken neck she was prescribed a narcotic oxycodone and a muscle relaxer diazepam. But the drug combination made her oxycodone with a leftover fentanyl patch. She just didn't realize that she lost her tolerance of fentanyl. And unknown to her this one fentanyl patch became deadly and caused her to overdose. What if she borrowed the fentanyl patch from a relative that she had never been prescribed hypothetically a fentanyl patch? Would the outcome be different? No I still think it's a fact that the jury could consider in determining proximate cause on this issue. But I think that the acquired it would not alone be dispositive. It would still be a fact question for the jury. So so so a torque fuser could reasonably foresee that someone would take an anti-pain medication that as I understand it is stronger than morphine and that had never been prescribed for the person and could obtain that through a relative and that all of that would be reasonably could be reasonably foreseeable to a torque fuser? I mean I am going to point out that's not the facts of our case but I but I am also going to you you're asking me a hypothetical and I I as I read the cases I mean we have the we do have the case where it's a legally acquired heroin and morphine and I do think that the dividing line is really is it a pain medication because if so long as it's a pain medication it's foreseeable and the cases just don't distinction between how it was acquired or anything else and I think that's consistent even with the proximate cause standard you know and build it they will drink in the Colorado Supreme Court case they say the test of foreseeability does not require defendant to foresee the exact nature and extent of the injuries or the precise manner in which the injuries will occur but only that some injury will likely result in some manner as a consequence of negligent acts and I think that our starting point should be this is a fact question to go to the jury the facts have to be extraordinary to take it away from them and if there's no further questions I would like to reserve the remainder of my time May it please the court my name is Heather Salg I represent State Farm Mutual Automobile Insurance Company the defendant appellee in this action we are requesting that the court affirm Judge Brimmer's dismissal of this case on summary judgment there are three things that I would like to highlight as we discuss this case this morning the first is the fact that there is an absence of authority saying the coroner's report was entitled to any particular weight or presumption of validity the second is the importance of the rule 56d motion and affidavit that were filed in the case below in which plaintiffs said there are facts essential to surviving summary judgment that must be developed on foreseeability plaintiff did not develop those facts or evidence they are not part of the record and as such there is a failure of proof with respect to foreseeability and the court correctly entered summary judgment for that reason the third point I'd like to highlight as we talk this morning is the fact that this matter is before the court subject to de novo review the court may affirm the decision of the trial court on any evidence in the record is as long as the plaintiff had been alerted and put on notice and had an opportunity to respond thank you your honor and yes we will discuss that I do believe that the plaintiff was well on notice of issues from the beginning since 2005 mrs. Thompson had chronic back pain it was time of car accident that's a subject of this case in 2013 she was prescribed fentanyl for the problem she had in 2005 she was prescribed that medication through 2010 2010 she stopped taking that medication at least with a prescription in 2010 three years later while still on a disability and still having chronic neck pain she was in a car accident is that car accident that is the subject of our case as a result of that car accident she did have neck pain she was prescribed additional medication she was not prescribed fentanyl ms. Thompson sought liability to benefits and UIM benefits from State Farm State Farm insured both the torque these are Andy was the you carrier State Thompson on August 23rd 2013 10 days after the accident at which point she told State Farm I'm a nurse State Farm you that 10 days after the accident the records that showed that State Farm asked for medic medical records and got those medical records and reviewed those medical records and those medical records showed that up until about February of 2014 so the last medical record prior to February 2014 that State Farm had was one from January 14 2014 routine office visit no indication of severe pain no indication in this Thompson's medications were not working no indication that she had nausea and was having difficulty with the medication she was being prescribed she didn't discuss any of those things with her doctors plaintiff counsel claims that Ms. Thompson was struggling with her pain that her other medications weren't working and that's why she took fentanyl that's something that they wanted to develop that they filed a rule 56 D motion so they could create that evidence well let's say just hypothetically plaintiff's counsel thought without further discovery that he wouldn't be able to survive summary judgment rule 56 is a is an objective standard and I mean whatever the lawyer thinks why is that pertinent to us as you said at the outset we're conducting an overview based on the summary judgment record whatever plaintiff's counsel thought or things is really of no no mind to us is it excellent point your honor here's the thing plaintiff's counsel knew that to show foreseeability they were going to have to come up with some additional evidence they were going to have to get for example affidavits from people who the plaintiff who knew what kind of pain that she was in before and after this car accident people who knew whether her pain was being controlled by the medication that she had see you're saying that we should affirm this summary judgment based on a genuine based on the absence of a genuine issue of material fact about whether she was experiencing pain I'm saying your honor that there's a failure of proof with respect to whether ms. Thompson's use of an illegal substance was foreseeable so all of the cases that were discussed by the trial court and later in the appellate motions talk about the kinds of evidence that might establish foreseeability for example in some of the cases people said well I've got intractable pain they would tell this to the people in their family their their sons their daughters their parents they would tell their doctors I have intractable pain it's not helping the psychological issues that would interfere with their ability to correctly take their medications all of those are facts that other courts have considered showing some evidence of foreseeability so is it your position that there's no evidence in this record that she had any type of increased pain because of the accident to the contrary there is evidence that she had increased pain after the accident she sought medical care for that increased pain she was treated for that increased pain they gave her prescriptions for the pain including oxycodone and diazepam and other medications she consistently filled those medications as we know from her PDMP records and she talked to her doctors about the pain and the medication she was giving all of those things are in the record what is not in the record is any indication that those medications weren't working well we I mean you question I guess the significance of the coroner's report but there was no oxycodone in her system there was diazepam so and then there was I think evidence in which one can reasonably infer that that she was taking something as a substitute for oxycodone I mean she didn't have oxycodone and she did have a fentanyl in her system so what what the coroner's report indicated inaccurately was that she had been taking medication for the accident I'm using air quotes there for the record for the accident the the fact of the matter is that the evidence never showed that in fact that fentanyl that ms. Thompson took was undisputedly not given to her for the accident so while it is true your honor that she was given prescriptions to take for the accident and for medications after the accident there was no indication that she ever told her doctors this medication isn't working why why why would that allow us to sustain a summary judgment ruling so she didn't tell the doctor we having we know that I don't know that's plaintiff even quarrels with it but she did take a fentanyl patch from an old prescription that she shouldn't obviously should not have done so clear to be clear there is no there is no record evidence anywhere as to how she got that fentanyl patch we do not know you have no idea if it's an old patch well you never argued that in your summary judgment motion did you I'm sorry I know you argue that now but did you argue that in your summary judgment motion we argued in the initial summary judgment motion which is found in the record I believe it pages 77 79 and 85 that there was no evidence that is to support there was no record evidence to claim then in the initial reply brief so the court might remember there were two reply briefs filed in the initial reply we said it was unclear how ms. Thompson got her fentanyl and there was no evidence that it was from a prior prescription that's page 234 of the record the idea that that the plaintiff didn't know we were making that claim cannot be reckoned reconciled with that information or the January 10th 2018 defense expert report saying there's no record evidence of where this fentanyl came from this is at page 459 of the record this is a claim that has been made from the beginning why does it matter where it came from if the evidence shows that she took it circumstantial evidence shows she took her from her pain so that's the problem your honor we don't know why she took it there don't we have to don't we have to purposes of summary judgment inferences that can be made should be made in on behalf of in light most favorable to the plant but as the court is aware there are a number of other cases that have looked at these issues and in all of those cases the courts have looked at things like was the plaintiff capable of understanding what she was doing was the plaintiff capable of making decisions did they take medication on accident for example so for example if there were some indication that ms. Thompson had been given a fentanyl patch previously and then had let's say some other sort of patch I don't know tramadol patch or something like that for this accident and she mixed them up then some of the other cases we've looked at might suggest that that's foreseeable but that's not what happened here we don't know where this fentanyl patch came from this fentanyl patch was if it was old it was three years after the last prescription that she had been given and of course there are other inferences in evidence supported by medical records in the record that indicate that this lady had a history of drug-seeking behavior of overusing medication of reporting that her medications had been stolen of having testing results with many but that's that's in making inferences in your favor well but the evidence is there I'm not I'm not I'm not saying it's not but you said you could infer that from the evidence but that's I mean certainly the plaintiff isn't inferring those things those are inferring you're making inferences in your favor what I'm trying to say your honor is that in order to say we're going to infer something on the favor of the plaintiff there should be something more in the other cases that the courts have cited these these cases talk about an inference that we could draw maybe this person took medication on accident because it was confusing these two medications because the person had a psychological issue because the plaintiff had a previous closed head injury those are reasons why we could make an inference on behalf of the best case supporting the idea that that they had to produce evidence that she took this because she was in pain do you have a case I'm so sorry I don't I'm not sure okay so you were arguing that it matters that there's no evidence in the record showing that she slapped on the fentanyl fentanyl patch because she was in pain well as the court had asked my counsel my colleague previously what happens if somebody's taking medication that's ordered from China or off the street or what have you well the Stewart case deals with exactly that and in the Stewart case a claimant took medication for which he had wrote no prescription it was his wife's prescription he took it knowing that it was his wife's prescription and this was found to break the causal chain that was because the plaintiff did not follow his physicians orders did not call his physician to report problems with pain or seek less drastic alternatives for the problems he was having he did not take his wife's narcotic pain medication by accident or mistake those are the important factors that we need to look at and they're exactly the same as what we're facing here ms. Thompson was under the care of a medical provider what do you do with the dies because they're on a high-powered drug and they and they drink alcohol obviously not prescribed by their doctor I mean how do you distinguish away those cases so all of this first of all I want to mention there's the important issue to distinguish many of the cases is the standard of review and workers compensation cases is completely different than the tort cases but beyond that most of those cases Leia Wetstein Eagle Seagram these cases all deal with foreseeability so I mentioned in this case we have a failure of proof on foreseeability all of those cases plaintiff developed facts from loved ones from people that knew the plaintiff from medical providers themselves saying this person was out of control with pain and they couldn't they couldn't find anything else we just don't have that evidence here the 56 D motion was sought to obtain that evidence and it wasn't obtained plaintiff knew that evidence was essential that's why they filed the rule 56 D motion in the first place I did want to very briefly touch your honors on this issue pertaining to gross negligence it was in response to the motion for summary judgment that the plaintiff argued ms. Thompson was that her negligence was akin to medical negligence that was plaintiffs response defendants reply pointed out that gross negligence of course can be can be a break the causal chain and to note that this does apply in tort cases the Danko case cited by the plaintiff indicates an exception exists to the liability of initial positions they are not answerable for the harm cause but by misconduct which is extraordinary simply put such misconduct constitutes a superseding cause and they cite Walcott versus total petroleum for this proposition when it appears to the court in retrospect that it is highly extraordinary that an intervening cause has come into operation the court may declare such a force to be a superseding cause that's a tort case finally your honor I am out of time we would certainly request that while this case involves a very tragic situation this case does not call for a bright line rule the court can affirm judge Brimmer based on the narrow facts of this very unusual case thank you your honors thank you counsel hear from the appellant and rebuttal so there's I believe three things that I want to address first there are all these issues of these factual issues that are there being raised and then I believe being raised for the first time on appeal and I do think that in the reply brief we address each one of them in great depth so I would encourage you to review the reply brief in some depth because there you know it was there is evidence that it was from a leftover fentanyl patch and defendant did never contest that never contested that the fentanyl was being used to treat pain I guess what I'll read is just one portion of her summary judgment motion in the motion for summary judgment they say here even if the court accepts placed plaintiff's assertion that Cynthia Thompson's death was caused by her use of diazepam and fentanyl due to injuries that she sustained in the motor vehicle accident and then they go on to say Cynthia Thompson's use of a non-prescribed fentanyl with diazepam would not have been reasonably foreseen I mean this issue of oh it wasn't used for pain just simply was never preserved and there is ample evidence of it and it's all cited in our reply brief I wanted to address you asked a question about the Stewart or you asked her for her best case and she cited the Stewart case the Stewart case is distinguishable I mean primarily fundamentally the reason why that case is distinguishable is because we have fact-finding in that case in Stewart it went to the finder of fact and the finder of fact said that there was no cause that's that's the primary distinction between that case in this one there's also a second distinction between that case in this one it's it's a workers compensation case and it's from another jurisdictions from Wyoming and they use the standard there is direct cause they keep on talking about direct cause as opposed to talking about proximate cause so I think that those are the two primary reasons in which it's distinguishable it's also distinct distinguishable on its facts and we lay that out in our reply brief I want to touch on this issue of gross negligence because she discussed it and she's suggesting that we didn't preserve the argument having to do with gross negligence I believe that we did having to do with like a plaintiff's gross negligence negligence is not a superseding cause excuse me this argument about gross negligence was made by defendants but it was never adopted in the district court but it was never adopted in the district courts reasoning we are opening brief address the reasoning of the district court when they raise this issue having to do with gross negligence in the answer belief we necessarily raised in the reply all of that is entirely appropriate if there's no further questions I would ask this court to reverse the district courts order thank you this matter will be submitted appreciate both councils excellent advocacy in writing and in argument will do